OPINION
{¶ 1} This appeal, having been heretofore placed on the accelerated calendar, is being considered pursuant to App.R. 11.1(E) and Loc.R. 12. Pursuant to Loc.R. 12(5), we have elected to issue a full opinion in lieu of a judgment entry.
 {¶ 2} Plaintiff-appellant, Mary E. Boley, appeals from a decision of the Crawford County Court of Common Pleas, Probate Division, granting summary judgment in favor of defendants-appellees, Michael A. Kennedy, et al, in a will contest action. Finding none of the arguments advanced on appeal to have merit, we affirm the decision below.
 {¶ 3} The pertinent facts and procedural history are as follows. Betty L. Stuckey ("decedent") died on May 11, 2000, with no direct lineal descendents. Appellant is the half-sister of the deceased. A document purporting to be decedent's last will and testament ("the will") and signed by decedent on May 25, 1994 was admitted to probate. The will named Michael A. Kennedy as executor and devised all of decedent's property to multiple legatees including appellant. On September 8, 2000, appellant filed a will contest in the Crawford County Probate Court alleging that decedent lacked the necessary testamentary capacity and that decedent was subject to undue influence on the day she signed the document. Appellees filed a counterclaim on November 29, 2001, seeking enforcement of the will's in terrorem clause.
 {¶ 4} On March 14, 2002, appellees filed a motion for summary judgment to which was attached supporting affidavits from Michael A. Kennedy, Bonnie J. Kennedy, and Mindy Ritzaupt. Michael Kennedy attested that he drafted the will and both he and Bonnie Kennedy, his secretary, attested that they were present at the time decedent signed the will. Michael and Bonnie also both agreed that decedent was of sound mind and memory when she affixed her signature to the will. Ritzaupt, decedent's financial advisor, attested that decedent was of sound mind and capable of handling her affairs in the year decedent executed the will.
 {¶ 5} Appellant filed a responsive memorandum which included affidavits in support from E. Richard Hottenroth, Maryetta Stuckey Ruhlen, and a supplemental affidavit from appellant. Hottenroth attested that, upon his review of Michael Kennedy's deposition and the will of the deceased, the deceased was not of sufficient mind or memory when she signed the will. Ruhlen, the deceased's sister-in-law, certified that the deceased was acting "awful funny and strange" in the early 1990's and that the deceased was "always under the influence of Annabelle Sherman." Also included in the record were the depositions of appellant, Michael Kennedy, Bonnie Kennedy, and multiple legatees.
 {¶ 6} On August 30, 2002, the trial court filed a judgment entry granting appellees' motion for summary judgment. The trial court concluded that there was no genuine issue of material fact and that reasonable minds could come to but one conclusion and that conclusion was adverse to appellant. Thus, the trial court held that appellees were entitled to judgment as a matter of law.
 {¶ 7} Appellant now appeals asserting three assignments of error for our review.
ASSIGNMENT OF ERROR NO. I
 The Trial Court committed reversible error, abused its discretion and its decision was against the manifest weight of the evidence which was prejudicial to Appellant when the Trial Court granted the Defendant-Appellees [sic] motion for Summary Judgment finding as a matter of law the decedent possessed the testamentary capacity and/or was not unduly influenced at the time she executed what purported to be her Last Will and Testament on May 25, 1994.
 ASSIGNMENT OF ERROR NO. II
 The Trial Court committed reversible error, abused its discretion and its decision was against the manifest weight of the evidence when the Trial Court struck and/or did not consider the opinion affidavit testimony of E. Richard Hottenroth that the decedent lacked the testamentary capacity at the time she executed what was purported to be her Last Will and Testament on May 25, 1994.
 ASSIGNMENT OF ERROR NO. III
 The Trial Court committed reversible error, abused its discretion and its decision was against the manifest weight of evidence which was prejudicial to Appellant when the Trial Court found statements by the Decedent to the Appellant were inadmissible as being hearsay when in fact the statements made by Decedent to the Plaintiff were introduced to demonstrate Decedents [sic] then existing state of mind.
 {¶ 8} In her assignments of error, appellant contends that summary judgment was improper as there were genuine issues of material fact as to whether the decedent lacked testamentary capacity and whether she was under the undue influence of another when the will was executed. Furthermore, appellant claims that the trial court erred as a matter of law when it failed to consider the Hottenroth affidavit and when it dismissed, as hearsay, statements allegedly made by decedent to appellant. We will address the assigned errors pertaining to the Hottenroth affidavit and the deceased's alleged remarks to appellant as that evidence arises in our evaluation of the first assignment of error.
 {¶ 9} When considering an appeal from the granting of summary judgment, our review is de novo, giving no deference to the trial court's determination.[1] Pursuant to Civ.R. 56(C), a trial court can properly grant a motion for summary judgment when (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion is made.
 {¶ 10} The first element of appellant's appeal focuses on the decedent's testamentary capacity.[2] Appellant claims that decedent was not of sound mind and memory when the will was executed. An order admitting a will to probate is prima facie evidence of its validity pursuant to R.C. 2107.74; however, an otherwise valid will may be invalidated if the testator lacked testamentary capacity at the time she executed the will.[3] Evidence of the testator's mental and physical condition, both at the time the will is executed and within a reasonable time before and after its execution, is admissible as casting light on her testamentary capacity.[4] Testamentary capacity exists when the testator has sufficient mind and memory: First, to understand the nature of the business in which she is engaged; Second, to comprehend generally the nature and extent of her property; Third, to hold in her mind the names and identity of those who have natural claims upon her bounty; Fourth, to appreciate her relation to the members of her family.[5] The burden of proof in determining testamentary capacity is on the party contesting the will.[6]
 {¶ 11} In this case, appellant presented evidence in the form of her affidavit and deposition, the deposition of Michael Kennedy, and the affidavits of E. Richard Hottenroth, and Maryetta Stuckey Ruhlen. Ruhlen's affidavit professes the opinion that in 1993 the deceased was acting strange. No specific incidents of strange behavior were noted by Ruhlen. However, appellant attests that near the time the will was made, the deceased believed she had visits from relatives who had died some years in the past, including her late husband with whom she intended to have a chicken dinner. Appellant also asserts that the decedent suffered from confusion on one occasion as to whether or not appellant had brought her cookies. Appellant claims that she baked and delivered the decedent cookies one afternoon and the decedent, commenting the next day on how good the cookies were, mistakenly thought they came from a neighbor. Appellant cites this forgetfulness as raising a question of fact as to whether the decedent had the capacity necessary to execute the will. On the days the decedent was visited by the dead or on the afternoon she forgot who delivered to her some food, perhaps the decedent was exhibiting odd behavior; however, neither the forgetfulness nor the strange behavior, if true, suggest that the deceased did not have the requisite testamentary capacity on the date the will was signed in May, 1994.
 {¶ 12} Additionally, appellant asserts the will itself and the testimony of Michael Kennedy and Bonnie Kennedy as evidence that the decedent lacked the mental capacity to identify those who have natural claims upon her bounty or to appreciate her relation to the members of her family.[7] The will itself does not identify appellant as the half-sister of the decedent. In fact, the will merely gives the names of the legatees, not their relationship to the deceased. Michael Kennedy testified that he was not aware, when drafting the will in 1994, that appellant was the half-sister of the decedent. Although it was his standard practice to inquire of a client whether she has legal heirs, Michael states that he could not say for sure whether he had specifically inquired as to the deceased's legal heirs.
 {¶ 13} Bonnie Kennedy confirmed the fact that Michael did not know that the appellant was the decedent's half-sister, but she did not say if Michael had inquired as to the deceased's legal heirs. However, Michael's deposition, and that of his secretary Bonnie, also stated the opinion that the deceased was of sound mind and understood the contents of the will when it was executed. Michael Kennedy also stated that the deceased reviewed the first draft of the will and asked that certain changes be made. The deceased then reviewed the second and final draft of the will at issue before signing it. Despite the fact that the will's drafter was unaware of the deceased's relation to appellant, there is other evidence in the record that the deceased talked to other friends and relatives of appellant as being her half-sister such that there does not remain an issue as to whether appellant could appreciate her relationship to her half-sister.
 {¶ 14} Yet other evidence within the record, including affidavits and deposition testimony from relatives, neighbors, and the deceased's financial advisor, reveals that the deceased knew she was executing a will and, additionally, was in charge of her personal and financial affairs at all times up until her death. In total, only the E. Richard Hottenroth affidavit, which we will address next, claims that the deceased was of an insufficient state of mind on the date she reviewed and executed the will.
 {¶ 15} With respect to Hottenroth's affidavit, appellant raises a flag of error regarding the trial court's lack of consideration of the opinion therein expressed. The Hottenroth affidavit was the subject of appellees' motion to strike pursuant to Civ.R. 56(E), which provides in part that "supporting and opposing affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence." Countering the motion to strike, appellant argues that Hottenroth was an expert whose testimony was admissible as to the ultimate fact.
 {¶ 16} Evid.R. 704 provides: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an issue to be decided by the trier of fact." The Staff Notes to Evid.R. 704 indicate that the rule does not necessarily "make opinion evidence on the ultimate issue admissible; it merely provides that opinion evidence on an ultimate issue is not excludable per se." The rule is to be read in conjunction with Evid.R. 701 and 702, each of which requires opinion testimony to help or assist the trier of fact in the determination of a factual issue.[8]
 {¶ 17} Shepard v. Midland Mut. Life Ins. Co.[9] sets forth the general rule as to the admissibility of opinion evidence on an ultimate issue:
 Although a witness may be qualified to give an opinion concerning a matter upon which opinion evidence may be admissible in and pertinent to the determination of an issue, as a general rule such an opinion, whether expert or otherwise, may not be admitted when it, in effect, answers the very question as to the existence or non-existence of an ultimate fact to be determined by a jury.
 Where an ultimate fact to be determined by the jury is one depending upon the interpretation of certain scientific facts which are beyond the experience, knowledge or comprehension of the jury, a witness qualified to speak as to the subject matter involved may express an opinion as to the probability or actuality of a fact pertinent to an issue in the case, and the admission of such evidence does not constitute an invasion or usurpation of the province or function of the jury, even though such opinion is on the ultimate fact which the jury must determine.[10]
 {¶ 18} The Sixth District has permitted a witness to offer his expert opinion as to the mental capacity of a decedent and her competency to make a will. In In re Seelig's Estate, the court found that an expert's opinion testimony was admissible as to an ultimate fact without infringing upon the jury's function, if the determination of the ultimate fact required the application of expert knowledge not within the jury's common knowledge.[11] In Selig, the expert was a judge who was personally familiar with the testator.[12] Two years later, in Gannettv. Booher,[13] the Sixth District recognized "that the abolition of the `ultimate issue' rule by Evid.R. 704 does not, however, render all opinions admissible. An expert may not offer an opinion which embraces the `ultimate issue' if that opinion is essentially a bare conclusion significantly lacking in supporting rationale."[14]
 {¶ 19} In the present case, Hottenroth attested that he has been a licensed attorney in the State of Ohio since 1962 and that approximately forty percent of his practice "entails drafting and probating wills, drafting trust documents and estate planning." Upon reviewing the four corners of the decedent's will and reviewing the deposition of Michael Kennedy, Hottenroth determined that on May 25, 1994 the decedent "did not have sufficient mind or memory to hold in her mind the names and identity of those who had a natural claims upon her bounty, nor was she able to appreciate her relation to the members of her family." Hottenroth had no contact with or observation of the deceased at any point. Although he may qualify as an expert as to the usual and preferred method of drafting wills, there is no basis for the opinion offered because essential facts for such could only come from the things he admittedly did not do — have some contact with or observation of the decedent. Hottenroth's opinion is, ultimately, a bare conclusion devoid of any supporting rationale. We cannot find, in light of the lack of foundational support for Hottenroth's assertion as to the deceased's "sufficient mind," that the trial court erred in concluding that the affidavit lacked probative value as to deciding the ultimate issue herein.
 {¶ 20} In total, appellant has presented vague and broad assertions concerning the decedent's lack of testamentary capacity. Moreover, appellant was not present at the time the will was discussed and executed in the presence of Michael Kennedy and has offered no evidence to controvert Michael's conclusion that the decedent was competent to execute her will on May 25, 1994. Therefore, we conclude that appellant has not established a genuine issue of material fact to indicate that the decedent did not possess the necessary testamentary capacity on the date in question within the meaning of Niemes. Accordingly, we hold that that the trial court correctly entered summary judgment in favor of appellees on the issue of testamentary capacity.
 {¶ 21} The second element of appellant's appeal centers on a claim of undue influence. When considering a claim of undue influence, Ohio courts have found that a testator has been unduly influenced by another when the testator is restrained from disposing of property in accordance with his or her own wishes and instead substitutes the desires of another.[15] The contestant claiming undue influence bears the burden of demonstrating the following four elements: (1) a susceptible testator, (2) another's opportunity to exert influence on the testator, (3) the fact that improper influence was exerted or attempted, and (4) a result showing the effect of the improper influence. In defining what constitutes undue influence, the Supreme Court of Ohio has held:
 General influence, however strong or controlling, is not undue influence unless brought to bear directly upon the act of making the will. If the will or codicil, as finally executed, expresses the will, wishes and desires of the testator, the will is not void because of undue influence.
 The mere existence of undue influence or an opportunity to exercise it, although coupled with an interest or motive to do so, is not sufficient, but such influence must be actually exerted on the mind of the testator with respect to the execution of the will in question. It must be shown that such influence, whether exerted at the time of the making of the will or prior thereto, was operative at the time of its execution or was directly connected therewith. It must be shown that undue influence was exercised with the object of procuring a will in favor of particular parties."[16]
 {¶ 22} Appellant contends that the deceased was under the undue influence of Annabelle Sherman when the deceased executed her will. Sherman, who was the decedent's niece through her marriage to the late Myrl Stuckey, was a frequent visitor to the home of the deceased and helped with chores and errands. According to appellant, Sherman's influence was manifest through evidence of the deceased's purchase of a 1986 Buick at Sherman's suggestion. Testimony reveals that the deceased rarely drove the vehicle, and it was driven once a week to church by a neighbor for maintenance purposes. Although this purchase shows the possibility that Sherman's encouragement prodded the deceased to purchase the Buick, it, nevertheless, bears no inference that the will itself was the direct result of Sherman's alleged undue influence.
 {¶ 23} Having given deposition testimony as to private conversations between herself and the deceased, appellant asks this court, as she asked the trial court, to consider oral statements purportedly made by the decedent regarding the undue influence of Sherman and her brother, Lucas Stuckey. Appellant also urges our consideration of an oral statement from the deceased to appellant regarding the deceased's intention to distribute her estate to appellant. The trial court found that these statements were inadmissible hearsay, a decision which appellant disputes.
 {¶ 24} Because these assertions attributed to the deceased constitute statements made by an out of court declarant that were offered to prove the truth of the matter asserted, they are barred by the hearsay rule unless an exception applies to allow their admissibility.[17]
Evid.R. 804(B)(5) provides for certain hearsay statements to be admissible at trial if the declarant is unavailable as a witness and states in part:
 (B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
* * *
 (1)Statement by a deceased or incompetent person. The statement was made by a decedent * * *, where all of the following apply:
(a)the estate * * * is a party;
(b)the statement was made before the death;
 (c)the statement is offered to rebut testimony by an adverse party on a matter that was within the knowledge of the decedent * * *.
 {¶ 25} Evid.R. 804(B)(5) is not intended to permit a surviving party opposing the decedent to offer such evidence as appellant seeks to introduce.[18] Rather, the rule permits a hearsay exception for the declarations of the decedent which rebut testimony offered by an adverse party and is only available to the party substituted for the decedent.[19]
Here, appellee Michael Kennedy, in his capacity as executor, is the party representing the decedent. Appellant, the surviving party, is not using the decedent's statements to rebut the testimony of an adverse party. Rather, the decedent's purported declarations comprise part of appellant's case in chief. As a result, the exception outlined in Evid.R. 804(B)(5) does not apply to the statements offered by appellant.
 {¶ 26} We find no error in the trial court's decision regarding the out-of-court statements by the decedent that were offered by the appellant and, further, will not consider them for purposes of the present appeal. Accordingly, we determine that appellant has not produced evidence of a genuine issue of material fact as to the issue of undue influence.
 {¶ 27} In summary, appellant has not satisfied her burden of producing evidence of genuine issues of material fact on all elements of her claims of lack of testamentary capacity and undue influence. We find that reasonable minds can come to only one conclusion in this case, and that conclusion is adverse to appellant. As a result, appellant's assignments of error are overruled.
 {¶ 28} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment affirmed.
 WALTERS and SHAW, JJ., concur.
[1] Farmers Comm. Co. v. Burks (1998), 130 Ohio App.3d 158, 163.
[2] R.C. 2107.02 limits those who may make a will to "a person of the age of eighteen years, or over, of sound mind and memory, and not under restraint, may make a will."
[3] Niemes v. Niemes (1917), 97 Ohio St. 145, paragraph four of the syllabus.
[4] Kennedy v. Walcutt (1928), 118 Ohio St. 442, paragraph two of the syllabus, overruled on other grounds.
[5] Niemes, supra.
[6] Kennedy, 118 Ohio St. at paragraph six of the syllabus.
[7] See Niemes, supra.
[8] Evid.R. 704, Staff Notes.
[9] (1949) 152 Ohio St. 6.
[10] Id. at syllabus.
[11] (1981) 2 Ohio App.3d 223.
[12] Id.
[13] (1983), 12 Ohio App.3d 49.
[14] Id. at 52.
[15] West v. Henry (1962), 173 Ohio St. 498, 501.
[16] Id. at 501.
[17] Evid.R. 802.
[18] Hamilton v. Hector (Jan. 27, 1997), Hancock App. No. 5-96-28.
[19] Id.